```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
JERRY MARTIN KOKOSHKA,                                                 :
                                                                       :
                              Plaintiff,                               :
                                                                       :      19 Civ. 10670 (JPC)
              -v-                                                      :
                                                                       :      OPINION AND ORDER
THE  INVESTMENT  ADVISORY  COMMITTEE  OF                               :
COLUMBIA UNIVERSITY,                                                   :
                                                                       :
                              Defendant.                               :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Columbia University has established an employee benefit plan that is funded through contributions made on behalf of eligible employees. Although the employees decide how their contributions are invested, the Investment Advisory Committee of Columbia University (the "Committee") retains the sole discretion to identify the available investment options. Plaintiff Jerry Martin Kokoshka, Ph.D., a participant in this retirement plan, directed that all his contributions be invested in a particular fund that, at the time, the Committee offered. In this action, Plaintiff brings a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), arguing that the Committee breached its fiduciary duty when it decided to remove that fund from the menu of available investments.

Before the Court is the Committee's motion for summary judgment. The Committee argues that it is protected from liability by a safe harbor provision in ERISA that applies to circumstances where an employee can decide how to invest their assets among different options. In the alternative, the Committee argues that Plaintiff has failed to allege facts or produce any evidence demonstrating a breach of fiduciary duty. While the Court finds the safe harbor provision inapplicable in this case, the Court agrees with the Committee that Plaintiff has failed to submit

any triable issues of fact demonstrating a breach of fiduciary duty. Accordingly, the Committee's motion for summary judgment is granted.

## I. Background

**A.    Factual Background[1]**

### 1.    The Retirement Plan

This lawsuit involves Plaintiff's participation in the Retirement Plan for Officers of Columbia University, an employee benefit plan established by The Board of Trustees of Columbia University to "provide[] retirement income benefits to Eligible Employees of the University." Dkt. 19-2, Exh. A (the "Retirement Plan") ¶¶ 1.1, 1.2; Def. Rule 56.1 Stmt. ¶¶ 1-2. The Retirement Plan permitted participants to direct their contributions among available investment options. *See* Retirement Plan ¶ 6.2; Def. Rule 56.1 Stmt. ¶ 11. The Committee was established to oversee and administer the Retirement Plan, retaining the "discretionary authority and powers necessary to control and manage [the Retirement Plan's] assets." Retirement Plan ¶ 10.2(b); Def. Rule 56.1 Stmt. ¶ 4. The Committee fulfilled this function by first selecting "Funding Agents." Retirement Plan ¶ 2.22; *see* Def. Rule 56.1 Stmt. ¶¶ 5-6. A Funding Agent was responsible for choosing, with

---

[1] The following facts are taken from the Committee's statement pursuant to Local Civil Rule 56.1. Dkt. 21 ("Def. Rule 56.1 Stmt."). In accordance with Local Civil Rule 56.2, the Committee provided the *pro se* Plaintiff with notice as to the potential consequences of failing to submit evidence in opposition to a motion for summary judgment. Dkt. 18 ("Rule 56.2 Notice"). That filing advised Plaintiff that in opposing the Committee's summary judgment motion, he "must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support [his] claim." *Id.* at 2. Despite being warned that failure to do so may result in "the Court . . . accept[ing] [D]efendant's facts as true," *id.*, Plaintiff has not submitted his own Rule 56.1 statement or any evidence in opposition to the Committee's motion. Nor does Plaintiff appear to dispute any of the Committee's proffered facts. The Court therefore deems admitted the Committee's facts as proffered in its Rule 56.1 statement. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("*Pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1."); *Paulin v. Town of New Windsor*, No. 18 Civ. 6182 (PMH), 2020 WL 5898958, at *1 n.4 (S.D.N.Y. Oct. 5, 2020) (deeming the factual assertions in the defendant's Rule 56.1 statement admitted when the *pro se* plaintiff did not submit any of his own evidence in opposition).

the Committee's approval, the "Funding Vehicles" to be offered under the Retirement Plan. Retirement Plan ¶ 2.23; Def. Rule 56.1 Stmt. ¶ 5.  The Plan defined a Funding Vehicle as "any group or individual annuity contract" or "any group or individual custodial account" that met certain statutory requirements under ERISA.  Retirement Plan ¶ 2.23; Def. Rule 56.1 Stmt. ¶ 6. Finally, the Committee would then approve the "Investment Funds" under a Funding Vehicle that would be available for investments by plan participants.  Retirement Plan ¶ 2.28; Def. Rule 56.1 Stmt. ¶ 8.  The Committee was not required to keep offering a fund it decided to place on the list of available investing options.  Instead, the Retirement Plan allowed the Committee "to add an Investment Fund or . . . to eliminate an Investment Fund by transferring amounts held thereunder to a successor Investment Fund" as long as "reasonable notice" was given to participants. Retirement Plan ¶ 2.28; Def. Rule 56.1 Stmt. ¶ 8.

Once the Committee made certain investment options available, participants had "the sole responsibility to direct investment of" their contributions "among the Funding Agents, the Funding Vehicles, and Investment Funds." Retirement Plan ¶ 6.2; Def. Rule 56.1 Stmt. ¶ 11.  A participant was required to initially choose where to invest his or her contributions among the available options but could also later reallocate the investment account by transferring all or part of the account to different funds.  *See* Retirement Plan ¶ 6.2(a)-(b).  If a participant's contributions were in an Investment Fund that was removed from the list of available investment options, the Retirement Plan required that the participant transfer his or her contributions to another available investment option.  *Id.* ¶ 6.1(c).  If the participant failed to do so, the Committee had the authority to establish procedures to redirect those investments to a different fund on behalf of the participant. *Id.*  One such procedure was to transfer those contributions to an "Investment Fund . . . intended to be a 'qualified default investment alternative' as described in ERISA Section 404(c)(5)."  *Id.* ¶ 6.1(c)(ii); *see also id.* ¶ 6.1(d).  The Retirement Plan also required that upon a decision to close

a fund, participants be given written notice of the forthcoming change "at least 30 days and no more than 60 days prior to the effective date" of the fund's removal. *Id.* ¶ 6.2(c).

During the relevant time, two Funding Agents offered the Investment Funds available to plan participants: The Teachers Insurance and Annuity Association-College Retirement Equities Fund ("TIAA") and The Vanguard Group Inc. ("Vanguard"). Retirement Plan ¶ 2.22; Dkt. 19-3, Exh. B ("Summary Plan Description") at 18; Def. Rule 56.1 Stmt. ¶ 7. TIAA and Vanguard offered participants 134 different funds to choose from, in such categories as "capital preservation, fixed income, balanced/premixed, large cap equity, mid cap equity, small cap equity, international equity, global equity, sector specific, and real estate." Def. Rule 56.1 Stmt. ¶¶ 16-17; *see* Dkt. 19-9, Exh. H ("Quarterly Investment Review").

The Committee regularly reviewed the menu of investment options available under the Retirement Plan to assess whether the options offered "(i) competitive long-term[] performance relative to market indicators, (ii) a diversified range of investment options, and (iii) competitive fee structure." Def. Rule 56.1 Stmt. ¶ 9. The Committee hired Aon Hewitt Investment Consulting to issue "Quarterly Investment Reviews" in advance of every Committee meeting. *Id.* ¶ 15.

### 2. Removal of the Vanguard Global Capital Cycles Fund

Plaintiff's claim stems from the removal of one particular fund from the Retirement Plan's portfolio of investments. On December 18, 2018, the Committee considered, among other topics, whether the Vanguard Global Capital Cycles Fund (the "GCC Fund") should be removed as an Investment Fund available to participants in the Retirement Plan. *Id.* ¶ 18. The Committee discussed that the GCC Fund had been "added to the Vanguard 'Watch List' due to its historical underperformance and a material change in investment philosophy and process." *Id.*[2]

---

[2] Aon Hewitt's Quarterly Report for the Fourth Quarter of 2018 reported that the GCC Fund was placed on the "Orange-Level Watch List" for that quarter, following its placement on the "Yellow-Level Watch List" in the First and Third Quarters of 2018, and after having

"After a thorough discussion," the Committee decided to remove the GCC Fund from the list of funds available to participants. *Id.* ¶ 20; Dkt. 19-1, Declaration of Dan Driscoll ("Driscoll Declaration") ¶¶ 11-12. Consistent with the policies set forth in the Retirement Plan, the Committee issued a written notice of this removal to participants in February 2019. Def. Rule 56.1 Stmt. ¶ 21; Dkt. 19-4, Exh. C ("Removal Notice"). The notice explained to participants that the GCC Fund would be removed as an available investment option and advised that if a participant failed to transfer his or her assets from the GCC Fund to another available fund by March 28, 2019, the balance would be directed to the "Vanguard Institutional Target Retirement Fund." Def. Rule 56.1 Stmt. ¶¶ 21-22; Removal Notice at 1.

Plaintiff, a participant of the Retirement Plan, invested in the GCC Fund and received the Removal Notice before the effective date of its removal. Def. Rule 56.1 Stmt. ¶ 23; Driscoll Declaration ¶ 15; Dkt. 23 ("Opposition") at 3. Because Plaintiff did not transfer his contributions to another fund, his investment balance was automatically moved to the identified "qualified default investment alternative," *i.e.*, the Vanguard Institutional Target Retirement Fund. Def. Rule 56.1 Stmt. ¶¶ 24-25.

**B.     Procedural Background**

Plaintiff, proceeding *pro se*, commenced this action against the Committee with the filing of the Complaint on November 13, 2019, Dkt. 1, and filed an Amended Complaint on January 16, 2020, Dkt. 6 ("Amended Complaint" or "Am. Compl."). Plaintiff alleges that in early 2017, he became concerned with "the high leverage in equity markets," and wished to "invest his retirement savings in gold to preserve [the] purchasing power of his savings and to avoid risk associated with market crash." *Id.* at 5. According to the Amended Complaint, Plaintiff contacted the Committee,

---

"[u]nderperformed [d]uring [the] [t]railing 5 [y]ears," "[u]nderperformed in 3 of 4 [t]railing [c]alendar [q]uarters," and "[d]iverged from [s]trategy and/or [p]ortfolio [c]haracteristics." Quarterly Investment Review at 26.

5

and the Committee recommended the "Vanguard Precious Metals and Mining Fund," which later became the GCC Fund.[3]  *Id.*  Plaintiff claims that he directed the Committee to move his savings to this fund and to "keep it in Plaintiff's portfolio until retirement or until Plaintiff instructs [the Committee] to sell."  *Id.*  He further alleges that, in March 2019, the effective date of the GCC Fund's removal from the Retirement Plan, he noticed a loss in his investments due to the Committee's divestiture of his position in the GCC Fund.  *Id.* at 6.

The Amended Complaint seeks relief under section 502(a) of ERISA, 29 U.S.C. § 1132.  Am. Compl. at 2.  Plaintiff alleges that the Committee was negligent in "fail[ing] to realize ahead of time the significant loss that [the Committee's] action would inflict on Plaintiff's retirement savings," and in failing to consider the harm that divestiture of the GCC fund would have on his "individual saving[s] account."  *Id.* at 6.  Plaintiff further alleges that the Committee breached its fiduciary duty by acting in its own interest rather than for his benefit.  *Id.* at 7 (alleging that the Committee was focused on "maximiz[ing] growth of the retirement accounts and improv[ing] [its] track record as fund manager," while Plaintiff "was interested in preserving [the] purchasing value of his savings").  Because the removed GCC Fund was not a "growing fund," Plaintiff asserts that his "retirement savings became the casualty of [the Committee's] desire to improve [its] own track record at the expense of Plaintiff's retirement savings in [a] clear breach of fiduciary duty."  *Id.*  Plaintiff seeks $23,803 in damages[4] and "requests that going forward" the Committee "take[] into consideration [the] impact of [its] actions on individual accounts of Columbia officers."  *Id.* at 9.

---

[3] While Plaintiff refers to the fund as the "MMP fund" in his opposition brief, neither party argues that this has any significance to this motion.  For clarity purposes, the Court refers to this fund as the "GCC Fund" throughout this Opinion and Order.

[4] It appears that Plaintiff arrives at this number by calculating the difference between the price of acquiring the fund in 2017 and the proceeds he received when the GCC Fund was divested in March 2019.  *See* Dkt. 19-8, Exh. G ("Plaintiff's Response to Interrogatories") at 1.  While Plaintiff alleges a loss of $23,803 in the Amended Complaint, his interrogatory response states that his more recent calculations reflect a loss of $24,090.62.  *Id.*

6

This case was reassigned to the undersigned on September 29, 2020. On December 15, 2020, after the close of fact discovery, the Committee moved for summary judgment. Dkt. 18, 19, 20 ("Motion"), 21. Plaintiff filed his opposition on December 29, 2020, Dkt. 23, and the Committee filed its reply on January 27, 2021, Dkt. 24.

## II.  Applicable Legal Standards

**A.    Rule 56 of the Federal Rules of Civil Procedure**

Rule 56 of the Federal Rules of Civil Procedure instructs that a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But not all factual disputes require denial of summary judgment. The Court's inquiry must instead focus on facts that "might affect the outcome of the suit under the governing law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of showing that no genuine factual dispute exists. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). In doing so, the moving party must "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). To meet this burden, a movant may demonstrate that the opposing party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that burden is satisfied, the nonmoving party may defeat the motion only by submitting "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal citation and quotation marks omitted). It is well settled that the opposing party may not rely solely on "conclusory allegations, conjecture, and speculation" as they "are

insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).

"When a *pro se* litigant is involved, the same standards for summary judgment apply, but 'the *pro se* litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)).  A court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest argument that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).  This principle, however, has limits and "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (internal citation and quotation marks omitted).  "[A] pro se party's bald assertions unsupported by evidence" are therefore "insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183-84 (S.D.N.Y. 2019) (quoting *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund.*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014)).

**B.    General Principals of Fiduciary Duty Under ERISA**

"ERISA is a comprehensive" statutory framework intended "to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).  The statute mandates "various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Id.* (quoting *Shaw*, 463 U.S. at 91). Particularly relevant here are the "fiduciary duties" prescribed by ERISA and made "applicable to

the management of both pension and nonpension benefit plans." *Varity Corp v. Howe*, 516 U.S. 489, 496 (1996).

"ERISA imposes both a duty of loyalty and a duty of care" on the fiduciary of a benefit plan. *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2018 WL 2727880, at *2 (S.D.N.Y. June 6, 2018) (citing 29 U.S.C. § 1104(a)(1)).  Section 1104(a)(1) specifies what each duty entails.  As to the duty of loyalty, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)-(ii).  Under the duty of care—sometimes referred to as the duty of prudence—a fiduciary must administer the plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

A plaintiff alleging a breach of fiduciary duty under ERISA must state and prove three elements: (1) the defendant is a fiduciary of the relevant benefits plan; (2) the defendant acted in its capacity as a plan fiduciary; and (3) the defendant "engaged in conduct constituting a breach of an ERISA fiduciary duty."[5]  *Severstal Wheeling Inc. v. WPN Corp.*, 809 F. Supp. 2d 245, 254

---

[5] Plaintiff purports to bring his claim pursuant to section 502(a) of ERISA but does not specify the subsection of that statute under which his cause of action proceeds.  *See* Am. Compl. at 2.  The Second Circuit has found that claims for breach of fiduciary duty under ERISA may proceed under section 502(a)(3).  *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89-90 (2d Cir. 2001); *Gerasyutenko v. Mason Tenders' Dist. Council Pension Fund*, No. 19 Civ. 5473 (LDH), 2021 WL 1572125, at *4 (E.D.N.Y. Mar. 31, 2021).  At least one court has commented, however, that such a claim "must be equitable in nature." *Gerasyutenko*, 2021 WL 1572125, at *4; *see Campbell v. WE Transp., Inc.*, No. 18 Civ. 5354 (MKB), 2020 WL 1528057, at *15 (E.D.N.Y. Mar. 31, 2020) (explaining that "[t]he Second Circuit has noted that section 502(a)(3) 'permits money awards only in very limited circumstances,' and '[c]lassic compensatory and punitive damages are never included within 'other appropriate equitable relief'" (quoting *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003)), *aff'd*, 847 F. App'x 88 (2d Cir. 2021).  Because the Committee does not challenge the Amended Complaint on the ground that the

(S.D.N.Y. 2011) (quoting *In re Pfizer Inc. ERISA Litig.*, No. 04 Civ. 10071 (LTS), 2009 WL 749545, at *6 (S.D.N.Y. Mar. 20, 2009)).  Only the third element is in dispute in this action.

### III.  Discussion

**A.    ERISA Section 404(c)'s Safe Harbor Does Not Apply to Plaintiff's Claim**

Section 404(c) of ERISA establishes a safe harbor from liability for fiduciaries in the context of certain plans that "provide[] for individual accounts and permit[] a participant or beneficiary to exercise control over the assets in his account."  29 U.S.C. § 1104(c)(1)(A).  The regulations promulgated under the statute set forth certain criteria that a plan must meet to qualify as a section 404(c) plan.  *See* 29 C.F.R. § 2550.404c-1.  In general, a participant must be afforded the opportunity to move his assets among different investment options, and the plan must also offer a "broad range of investment alternatives."  *Id.* § 2550.404c-1(b)(1)(i)-(ii).  If a plan meets the requirements set forth in the regulations, then "no person who is otherwise a fiduciary shall be liable under [ERISA] for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(A)(ii).  In other words, if a plan allows a participant to control where his or her contributions go and offers sufficient investment options, the fiduciary may not be held liable for the participant's own investment decisions.

The Committee seeks refuge in this safe harbor provision, arguing that Plaintiff's alleged loss was the result of his own independent exercise of investment control over his assets.  Motion at 7.  The Committee contends that Plaintiff exercised that control when, upon receiving the Removal Notice, he refused to move his assets to other investment options and allowed his funds to be automatically transferred to the Vanguard Institutional Target Retirement Fund as provided

---

monetary damages Plaintiff seeks are unavailable, the Court assumes without deciding that Plaintiff may bring his claim pursuant to section 502(a)(3).

under the Retirement Plan. *Id.* at 6-7. The Court, however, is not persuaded that this "action by inaction" theory is sufficient to implicate section 404(c).

Whether section 404(c)'s safe harbor applies depends on the nature of the claim and whether the plaintiff had an opportunity to exercise control over his or her assets. Here, the Court construes Plaintiff's allegations of negligence as asserting that the Committee breached its duty of care by divesting and removing the GCC Fund from the Retirement Plan. *See* Am. Compl. at 6 (alleging that "Fiduciary who ordered the divestiture caused more than 10% loss of Plaintiff's entire saving portfolio"); *id.* (asserting that the Committee, before deciding to remove the GCC Fund from the Retirement Plan's portfolio, did not analyze "the impact that [the Committee's] action would have on any individual saving account including Plaintiff's saving account"). And the Court construes Plaintiff's accusation that the Committee acted under a conflict of interests, which similarly focuses on the Committee's decision to remove the GCC Fund from the menu of investment options, *see id.* at 7, as pleading a breach of the Committee's duty of loyalty. Moreover, the Amended Complaint does not allege that the damages incurred by Plaintiff resulted from the transfer of funds from the GCC Fund to the default account; rather, Plaintiff calculates his damages by taking the difference between the price of acquiring the GCC Fund and the amount the GCC Fund sold for at the time of the divestiture. *See* Plaintiff's Response to Interrogatories at 1; *see also* Am. Compl. at 6 ("It was the divestiture [of the GCC Fund], rather than the acquisition, that resulted in a loss."); Opposition at 2 ("[The Committee] is responsible for the loss of [the Committee's] action, namely the forced divestiture of [the GCC Fund], caused."); *id.* at 4 ("The gist of this lawsuit is the singular event, a single point of time, of forced divestiture of [the GCC Fund] from my savings portfolio. This is the event that resulted in my loss."). Thus, Plaintiff's claim and the damages he seeks stem not from a transfer of funds but from the Committee's decision to remove the GCC Fund from the menu of available investment options.

The relevant inquiry, therefore, is whether the safe harbor applies to a fiduciary's act of removing an investment option from those offered to participants.  The Department of Labor, in a preamble to the regulations promulgated under section 404(c), stated that "the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plain language, is not a direct or necessary result of any participant direction of such plan."  *Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans)*, 57 Fed. Reg. 46906, 46924 n.27 (Oct. 13, 1992).  Several courts have read this statement as precluding application of section 404(c)'s safe harbor when a plaintiff's "claims are based on losses and breaches arising from the alleged imprudence of the maintenance and availability of [a fund] as an investment option."  *In re Am. Int'l Grp., Inc. ERISA Litig. II*, No. 08 Civ. 5722 (LTS), 2011 WL 1226459, at *4 (S.D.N.Y. Mar. 31, 2011); *see In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 359-60 (S.D.N.Y. 2009); *DiFelice v. U.S. Airways Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) ("[T]his safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant driven 401(k) plan.").  As the Seventh Circuit explained in *Howell v. Motorola, Inc.*:

> The language used throughout section 404(c) thus creates a safe harbor only with respect to decisions that the participant can make.  The choice of which investments will be presented in the menu that the plan sponsor adopts is not within the participant's power.  It is instead a core decision relating to the administration of the plan and the benefits that will be offered to participants.

633 F.3d 552, 567 (7th Cir. 2011).  This Court agrees with the analysis of section 404(c) in these decisions.

Plaintiff's claim arises from the Committee's decision to remove the GCC Fund from the investment options available under the Retirement Plan.  As the Committee argues in its own motion, Plaintiff had no control over this decision.  *See* Motion at 1 ("Plaintiff seems to believe

that he is empowered to decide which investment options the [Retirement] Plan offers as part of its investment options. He is not."). Accordingly, section 404(c) is inapplicable.[6]

**B.    The Committee is Entitled to Judgment on Plaintiff's Claim**

Having determined that section 404(c)'s safe harbor does not apply, the Court next considers whether there are triable issues of fact as to Plaintiff's breach of fiduciary duty claim.

The Court begins with the Committee's fiduciary duty of care. The inquiry "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (alterations in original) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)). "Whether a fiduciary acted with the requisite care 'is measured according to the objective prudent person standard developed in the common law of trusts.' '[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016) (internal citation omitted) (alteration in original) (quoting *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006); and then quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015)). The Court must analyze the fiduciary's actions in the context of "facts as they existed

---

[6] In his opposition brief, Plaintiff argues that "[the Committee] denied [him] control over [his] assets and repeatedly acted against [his] instruction." Opposition at 2; *see id.* at 3 ("[The Committee] took away my right to exercise control over my assets. Thus [the Committee] must take responsibility for the loss that ensued."). To the extent Plaintiff suggests that the Committee's failure to administer the Retirement Plan in accordance with section 404(c) resulted in a breach of fiduciary duty, the Court rejects that contention. Section "404(c) is simply a safe harbor provision that limits the liability of fiduciaries in some instances; a person does not 'violate' ERISA by straying from 404(c)'s guidelines." *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09 Civ. 1241 (RJH), 2010 WL 3219284, at *14 (S.D.N.Y. Aug. 12, 2010). If the Committee took away Plaintiff's control over his assets, the Retirement Plan would, for present purposes, no longer qualify as a section 404(c) plan. The only consequence would be the Committee's inability to invoke that section's safe harbor. But the failure to administer a plan pursuant to section 404(c) is not a violation of ERISA.

at the time of the challenged transaction," and "hindsight cannot form the basis of an ERISA claim." *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 418 (S.D.N.Y. 2010).

Plaintiff has not alleged facts, or provided evidence, showing that this duty of care was breached.  Plaintiff asserts that the Committee was negligent in removing the fund as "[r]ecords from quarterly investment review by [the Committee] and the minutes of the investment advisory committee special meeting, totaling over 50 pages of information . . . have no mention whatsoever of the impact that [the Committee's] action would have on any individual saving account including Plaintiff's saving account."  Am. Compl. at 6.  Plaintiff, however, does not provide these minute entries, nor any other evidence, for the Court's consideration.

More importantly, the Committee has proffered evidence showing that it fulfilled its duty of care when it chose to remove and divest the GCC Fund.  In assessing whether to retain the GCC Fund, the Committee discussed the fact that the fund had been added to a "Watch List" because of its historical underperformance and changed investment philosophy.  Def. Rule 56.1 Stmt. ¶ 18; Driscoll Declaration ¶ 10.  A Quarterly Investment Review, issued by a consulting firm retained by the Committee, reported that the GCC Fund had underperformed for three quarters of 2018 as well as the prior five years.  Quarterly Investment Review at 26.  The Committee also submitted the Declaration of Dan Driscoll, the Vice President and Chief Human Resources Officer at Columbia University, that describes how the Committee arrived at its decision to remove the GCC Fund only after thorough consideration.  Def. Rule 56.1 Stmt. ¶¶ 18-20; Driscoll Declaration ¶¶ 10-12.  And after deciding to remove the GCC Fund, the Committee followed all relevant procedures set forth in the Retirement Plan.  *See* Retirement Plan. ¶ 6.2(c).  The Committee notified participants, including Plaintiff, that the GCC Fund would be removed and afforded them time to transfer their contributions to a different fund.  *See* Def. Rule 56.1 Stmt. ¶¶ 20-22; Driscoll Declaration ¶¶ 13-15. The Removal Notice also warned participants that any contributions

14

remaining in the GCC Fund at the effective date of removal would be automatically transferred to a default fund. *See* Removal Notice. These undisputed facts show that the Committee acted prudently in evaluating the GCC Fund's performance and deciding that it was not a suitable investment option for the Retirement Plan.[7]

Nor can Plaintiff survive summary judgment as to his allegations that the Committee breached a fiduciary duty, including its duty of loyalty, by acting to maximize the growth of the Retirement Plan's investment portfolio. "So long as a fiduciary makes decisions 'with an eye single to the interests of the participants and beneficiaries,' it will satisfy its duty of loyalty even if its decisions 'incidentally benefit[]' itself, as well." *Perez v. First Bankers Tr. Servs., Inc.*, 210 F. Supp. 3d 518, 528 (S.D.N.Y. 2016) (alterations in original) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)). Furthermore, "[t]he fiduciary duties created by ERISA are owed to the plan." *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615, 1623 (2020) (Thomas, J., concurring); *accord Cunningham v. Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019); *Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*, No. 15 Civ. 1019 (JCH),

---

[7] Plaintiff states that he is "not able to verify" whether the Committee "acted with prudence" in removing the GCC Fund from the Retirement Plan because the Committee failed to provide him with "the name of the fund in the offering that replaced" the GCC Fund. Opposition at 4. Plaintiff therefore asks the Court to "disregard[]" "[the Committee's] claim of prudence." *Id.* The Court construes this as an opposition to the Committee's motion based on insufficient discovery under Rule 56. *See* Fed. R. Civ. P. 56(d) (providing that the court may deny a motion for summary judgment if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). Yet, Plaintiff has not filed an affidavit as required by the rule, and his *pro se* status does not excuse him from this requirement. *See Parker*, 425 F. Supp. 3d at 184. This is especially so given Plaintiff's receipt of the Rule 56.2 Notice, which contained the full text of Rule 56. *See* Rule 56.2 Notice. Moreover, discovery as to the fund that replaced the GCC Fund would not be relevant as to whether the Committee acted prudently in divesting the GCC Fund. Neither ERISA nor the Retirement Plan required the Committee to replace the GCC Fund with another investment option. Nor is there any indication in the record that the Committee's divestiture of the GCC Fund was somehow affected by considerations as to which investment option would replace it. Rather, as discussed above, the undisputed evidence shows that the Committee removed the GCC Fund because it was underperforming.

2018 WL 1419792, at *8 (D. Conn. Mar. 21, 2018) ("With respect to . . . breach of fiduciary duty claims . . . ERISA creates a fiduciary duty to plans, not individual participants or beneficiaries.").

Nothing in ERISA or the Retirement Plan required the Committee to make available any fund that a particular participant desired to invest in. To the contrary, the Retirement Plan specifically reserved to the Committee the ability to choose which investment options are available to participants. *See* Retirement Plan ¶ 10.2; *see also Howell*, 633 F.3d at 567 (holding that under ERISA "[t]he choice of which investments will be presented in the menu that the plan sponsor adopts is not within the participant's power"). As long as the Committee prudently selected the funds contained in the portfolio, "ERISA d[id] not require [it] to include a particular mix of investment vehicles." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17 Civ. 6685 (ALC), 2019 WL 4466714, at *10 (S.D.N.Y. Sept. 18, 2019).

What is more, requiring a fiduciary to include any fund desired by a participant would of course be unworkable and contrary to the duties that ERISA imposes on plan administrators. The only way the Committee could fulfill its duty to "provid[e] benefits to participants and their beneficiaries," while "defraying reasonable expenses of administering the plan," 29 U.S.C. § 1104(a)(A)(i)-(ii), was by prudently maintaining a list of available investment options suitable for the Retirement Plan as a whole. Because the Committee must monitor each investment, it would be impractical—and extremely costly—for it to offer any fund that a participant wishes to invest in. Further, while a certain fund may be suitable for one participant, it could be a wholly inadequate investment option for another. Favoring the preference of one participant over the Retirement Plan as a whole could thus be to the detriment of many other participants. Similarly, Plaintiff's urging that a duty of loyalty required the Committee to offer him the GCC Fund stands in tension with the Committee's separate duty of care, particularly given the considerable evidence of the GCC Fund's underperformance.

In sum, the Committee discharged its fiduciary duty by "monitor[ing] [the] investments," and deciding to "remove [an] imprudent one[]." *Tibble*, 575 U.S. at 529. Under the undisputed facts presented, no reasonable jury could find that the Committee breached its fiduciary duty of care or duty of loyalty.

### IV.  Conclusion

For the above reasons, the Court grants summary judgment in favor of the Committee. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 19, send a copy of this Opinion and Order to the *pro se* Plaintiff, and close this case.

SO ORDERED.

Dated: August 19, 2021
New York, New York

                                           _____
                                           JOHN P. CRONAN
                                           United States District Judge